1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9  Rebecca Pratt,                          | No. CV-19-04929-PHX-MTL

10              Plaintiff,                  | **ORDER**

11  v.

12  Commissioner of Social Security
   Administration,
13
              Defendant.
14

15        Plaintiff Rebecca Pratt appeals an administrative law judge's ("ALJ") decision to

16  deny her certain social security benefits.  Plaintiff filed a Complaint (Doc. 1) with this

17  Court seeking judicial review of that denial, and the Court now addresses Plaintiff's

18  Opening Brief (Doc. 14, Pl. Br.), Defendant Social Security Administration

19  Commissioner's Answering Brief (Doc. 15, Def. Br.), and Plaintiff's Reply Brief (Doc. 16,

20  Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and

21  affirms the ALJ's decision and dismisses Ms. Pratt's case.

22  **I.     BACKGROUND**

23        Ms. Pratt applied for social security benefits on August 23, 2013, for a period of

24  disability beginning on January 1, 2010.  (R. at 146, 298-318.) An ALJ heard the initial

25  case and denied benefits on September 1, 2015.  (R. at 146-59.) The Social Security

26  Commission's Appeals Council ("Appeals Council") remanded the case with instructions

27  to further consider the lay testimony of Ms. Pratt's boyfriend[1] and to obtain the input of a

28  ─────────────────
[1] Ms. Pratt's briefing refers to David Anderson as her "boyfriend" (Pl. Br. at 4), the ALJ
referenced him as Ms. Pratt's "fiancé" (R. at 42), and Mr. Anderson described himself as

1 vocational expert. (R. at 165-66.)

2 On remand, in a decision dated July 11, 2018, the ALJ found that Ms. Pratt had

3 major depressive disorder, borderline depressive disorder, mild neurocognitive

4 development, fibromyalgia, obesity, arthritis, and cervical degenerative disc disease. (R.

5 at 36.)  After considering the entire record, including the severity of Ms. Pratt's symptoms,

6 the ALJ determined that Ms. Pratt could perform light work with some restrictions. (*Id*. at

7 39-40.)  The ALJ also determined that Ms. Pratt is not disabled in the sense contemplated

8 by the Social Security Act. (*Id*. at 45.)  The Appeals Council denied review of this ruling

9 and it became the final decision of the Commissioner of Social Security (the

10 "Commissioner"). (R. at 1-3.)  Ms. Pratt then filed suit.

11 **II.     LEGAL STANDARD**

12 The Court only reviews the challenged portions of an ALJ's decision. *Carmickle v.*

13 *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*,

14 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on

15 appeal that are not specifically and distinctly argued in appellant's opening brief.").  The

16 Court may set aside the decision only when it is not supported by "substantial evidence"

17 or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).

18 "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It

19 means such relevant evidence as a reasonable mind might accept as adequate to support a

20 conclusion." *Id.*  "Where evidence is susceptible to more than one rational interpretation,

21 the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112

22 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial

23 evidence that could support a finding of disability, but whether there is substantial evidence

24 to support the Commissioner's actual finding that claimant is not disabled.").  "Yet [the

25 Court] must consider the entire record as a whole, weighing both the evidence that supports

26 and the evidence that detracts from the Commissioner's conclusion, and may not affirm

27 simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675.

28

_____

Ms. Pratt's "best friend" in the form he completed (R. at 363).

1  "[The Court] review[s] only the reasons provided by the ALJ in the disability determination

2  and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Finally,

3  [the Court] may not reverse an ALJ's decision on account of an error that is harmless."

4  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

5       To determine whether a claimant is disabled under the Social Security Act, the ALJ

6  engages in a five-step sequential analysis.  20 C.F.R. § 404.1520(a).  The burden of proof

7  is on the claimant for the first four steps but shifts to the Commissioner at the fifth.  *Molina*,

8  674 F.3d at 1110.  At step one, the ALJ determines whether the claimant is presently

9  engaging in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i).  If so, the claimant is not

10  disabled, and the inquiry ends.  *Id.*  At step two, the ALJ determines whether the claimant

11  has   a   "severe"   medically   determinable   physical   or   mental   impairment.

12  *Id.* § 404.1520(a)(4)(ii).  If not, the claimant is not disabled, and the inquiry ends.  *Id.*  At

13  step three, the ALJ considers whether the claimant's impairment or combination of

14  impairments meets or medically equals an impairment listed in a certain federal regulatory

15  provision.  *Id.* § 404.1520(a)(4)(iii).  If so, the claimant is disabled.  *Id.*  If not, the ALJ

16  proceeds to step four.  *Id.*  At step four, the ALJ assesses the claimant's residual functional

17  capacity ("RFC") and determines whether the claimant is capable of performing past

18  relevant work.[2]  *Id.*  § 404.1520(a)(4)(iv).  If so, the claimant is not disabled, and the inquiry

19  ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step and determines whether the

20  claimant can perform any other work in the national economy based on the claimant's RFC,

21  age, education, and work experience.  *Id.* § 404.1520(a)(4)(v).  If so, the claimant is not

22  disabled; if not, he is disabled.  *Id.*

23  **III.   DISCUSSION**

24       **A.   Medical Opinion Evidence**

25       Ms. Pratt argues that the ALJ improperly discounted the opinion of Dr. Brent Geary,

26  a psychologist who examined her. (Pl. Br. at 8-14.)  Dr. Geary performed a number of

27  tests on Ms. Pratt and observed her during their time together. (R. at 1579.)  He noted,

28  ---
[2] "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).

1    among other things, that she interacted with very few people, had memory problems, and

2    had been in a car accident some 20 years prior, which caused her to be in a coma for more

3    than a week.  (R. at 1581-82.)  Further, Dr. Geary found that while Ms. Pratt did well on

4    some cognitive testing, she did poorly in certain subcomponents.  (*Id*. at 1583-84.)

5    Ultimately, he found that Ms. Pratt would have trouble "sustaining sufficient pace on a job

6    [and] functioning independently without falling behind in her duties . . . ."  (*Id*. at 1585.)

7    Additionally, "[h]er ability to consistently cope with stresses and pressures in a work

8    setting and maintain regular attendance are also suspect."  (*Id*.)

9          The ALJ gave a number of reasons for assigning little weight to Dr. Geary's opinion.

10   (R. at 42.)  One was that the report was both internally inconsistent and inconsistent with

11   other portions of the medical record.  For example, Ms. Pratt scored perfectly on a mental

12   status exam.  (*Id*.)  The ALJ found this inconsistent with having a significantly impaired

13   memory.  (*Id*.)  Additionally, according to the ALJ, parts of the medical record show that

14   Ms. Pratt functions at a higher level than Dr. Geary's report suggests.  (*Id*.) For example,

15   Ms. Pratt told the psychologist that she could use a computer, complete daily chores and

16   play with pets.  (*Id*.)  Further, the ALJ noted that Dr. Geary examined, but did not treat,

17   Ms. Pratt.  (*Id*.)  Finally, the ALJ pointed out that Ms. Pratt paid for the Dr. Geary's

18   services, though the record is not clear as to whether that was a basis of the ALJ's decision.

19   (*Id*.)

20         Ms. Pratt, on the other hand, argues that the cognitive test the ALJ referenced is not

21   meant to measure memory functioning.  (Pl. Br. at 11.)  Further, Dr. Geary wrote to the

22   Appeals Council that Ms. Pratt's ability to engage in certain activities is not inconsistent

23   with some of the limitations he assessed. (R. at 54-55.)  Ms. Pratt also notes that the

24   psychologist spent four hours "interviewing her, testing her, and reviewing her records."

25   (Pl. Br. at 12.)  She argues that the ALJ erred in prioritizing the opinion of a different

26   examining psychologist who said that Ms. Pratt could work.  (*Id*. at 13.)  She argues that

27   Dr. Geary's opinion is newer, and the other opinion was given before Ms. Pratt's recent

28   mental health treatment.  (*Id*.)  Additionally, it was admittedly vague.  (*Id*. at 14.)

1    In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and
2    other evidence," including medical opinion evidence.  20 C.F.R. § 404.1545(a)(3).  The
3    ALJ is required to evaluate and weigh every medical opinion in the record.  20 C.F.R. §
4    404.1527(c).  The type of relationship a medical source has with someone seeking social
5    security benefits provides a starting point for deciding how much weight to give that
6    source's opinion about a claimant.  Generally, the views of doctors who have treated a
7    claimant get top priority. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  Opinions
8    of doctors who have examined but not treated a claimant are next in rank.  *Id*.  Those
9    doctors who have neither treated or examined a claimant generally get the least
10   consideration.  *Id*.  "If a treating or examining doctor's opinion is contradicted by another
11   doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons
12   that are supported by substantial evidence."  *Id*. An ALJ satisfies the substantial evidence
13   requirement by "setting out a detailed and thorough summary of the facts and conflicting
14   evidence, stating his [or her] interpretation thereof, and making findings."  *Id.*

15   Here, the ALJ gave little weight to Dr. Geary's opinion.  (R. at 42.)  Instead, the
16   ALJ gave significant weight to another psychologist who examined Ms. Pratt years earlier
17   because that psychologist's findings were consistent with the examination of Ms. Pratt.
18   (*Id*. at 43.)   Further, the examination was consistent with Ms. Pratt's own statements
19   concerning her daily activities.  (*Id*.)  Ms. Pratt argues that her condition is better on some
20   days than others and that the ALJ should have taken that into account.  (Pl. Br. at 16.)  The
21   ALJ, however, pointed to Ms. Pratt's statements that she improved with treatments and had
22   good functioning.  (Doc. 12-3 at 42.) "Impairments that can be controlled effectively with
23   [treatment] are not disabling for the purpose of determining eligibility for [social security]
24   benefits."  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).
25   Two state agency medical consultants also reviewed Ms. Pratt's files and opined that she
26   could perform work with certain restrictions despite her mental functioning.  (Def. Br. at
27   17-18.)  The Court finds that the ALJ provided specific and legitimate reasons, supported
28   by substantial evidence, to reject an examining psychologist's conclusions.

1    Ms. Pratt also argues that the ALJ must provide clear and convincing reasons for

2    rejecting Dr. Geary's report because it was not contradicted by another examining

3    physician. (Reply at 2.)  While the opinion from the examining psychologist that the ALJ

4    relied upon is older than Dr. Geary's assessment, the former nonetheless controverts the

5    latter.  "Where the evidence is susceptible to more than one rational interpretation, it is the

6    ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

7    595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)).

8    The Court will not overrule the ALJ's decision on this basis.

9    **B.    Rejecting Ms. Pratt's Testimony**

10    The Social Security Regulations require that an ALJ consider a claimant's

11    statements about her symptoms when it determines the claimant's RFC.  *See* 20

12    C.F.R. § 404.1545(a)(3).  The ALJ found that Ms. Pratt's testimony about the severity of

13    her symptoms was not credible. (*See* Doc. 12-3 at 43.)  Ms. Pratt argues that the ALJ erred

14    in doing so by not providing clear and convincing reasons. (Pl. Br. at 14-15.)  Such reasons

15    are required under Ninth Circuit case law absent evidence of malingering.  *See Morgan*,

16    169 F.3d at 599.  Ms. Pratt admits that on good days she has greater functionality. (Pl. Br.

17    at 16.)  But she argues that the ALJ should have given greater consideration to "the waxing

18    and waning nature of [her] condition and the frequency of her bad days, in addition to the

19    side effects of her medications." (*Id*. at 16.)  An inspection of the decision makes plain

20    that the ALJ gave clear and convincing reasons for rejecting Ms. Pratt's testimony.  The

21    ALJ noted, for example, that a brain injury specialist said that Ms. Pratt's statements about

22    her symptoms worsening were "very atypical" for the type of injury she suffered.  (R. at

23    41.)  In addition to inconsistency with the medical evidence, the ALJ found that Ms. Pratt's

24    statements were not in accord with other evidence in the record including progress notes

25    showing that Ms. Pratt improved with treatment. (*Id*. at 42.)  She also reported cooking,

26    attending art classes and attending a wedding. (*Id.*)  Ms. Pratt expressed a desire to stay in

27    contact with friends that she made at her art classes. (*Id.*)  The ALJ found that these

28    activities indicate "a high level of functioning" that is not consistent with Ms. Pratt's

1    statements about the "intensity, persistence, and limiting effects" of her symptoms,

2    including difficulty interacting with others. (*Id*. at 36, 39, 42.)  Despite this, the ALJ still

3    recognized that Ms. Pratt had some limitations and considered those in her finding about

4    the scope of the work Ms. Pratt could do. (*Id*. at 42.)  The Court finds that the ALJ provided

5    clear and convincing reasons for discounting Ms. Pratt's testimony.

6          **C.      Rejecting Lay Witness Testimony**

7          The Social Security Regulations also require that an ALJ consider the descriptions

8    and observations of a claimant's impairments provided by the claimant's "family,

9    neighbors, friends, or other persons" when determining the RFC. 20

10   C.F.R. § 404.1545(a)(3). Ms. Pratt argues that the ALJ erred by discounting lay witness

11   testimony from her boyfriend and son. (Pl. Br. at 19.) The Court disagrees.

12         Ms. Pratt's boyfriend and her son both gave statements concerning her ability to

13   function. (R. at 363-370, 438-444.)  The boyfriend completed a form which states that Ms.

14   Pratt only interacts with others on the internet, makes only simple meals, sometimes forgets

15   where she is, and loses money. (*Id*. at 364, 366, 367.)  He also wrote that Ms. Pratt needs

16   simple instructions, does not handle change well, gets drowsy from medicine and needs

17   help with her daily routine. (*Id*. at 368-70.)  The ALJ gave the boyfriend's testimony some

18   weight but noted that he was not Ms. Pratt's formal caretaker. (R. at 43.)  Ms. Pratt argues

19   that the ALJ did not fully consider her boyfriend's statements. (Pl. Br. at 19.)  The Court

20   finds this argument implausible for two reasons.  First, it appears that the ALJ's reason for

21   not giving greater weight to the boyfriend's statement is that it was inconsistent with the

22   medical record. (R. at 43.)  Second, the ALJ used Ms. Pratt's boyfriend's statement to

23   discount Ms. Pratt's son's statement.

24         Ms. Pratt's son wrote that his mother, among other things, had poor hygiene,

25   unkempt hair, rarely did household chores, would become upset if things did not go as

26   planned, and had a poor memory. (R. at 438-444.) The ALJ pointed out the discrepancy

27   between Ms. Pratt's boyfriend's statements about her ability to practice good hygiene and

28   her son's statements to the contrary. (R. at 43.)  As to the son's other statements, the ALJ

1    had already rejected those when addressing the boyfriend's testimony and was not required

2    to repeat the rationale when discussing the son.  *Molina*, 674 F.3d at 1114.

3           The ALJ must give germane reasons for rejecting lay witness statements.  *Lewis v.*

4    *Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Here, in addition to the reasons outlined above,

5    the ALJ already properly rejected Ms. Pratt's subjective complaints.  The Court thus finds

6    the ALJ properly rejected the boyfriend and son's opinions to the extent that they addressed

7    symptoms and complaints similar to those expressed by Ms. Pratt.  *See Valentine v.*

8    *Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the

9    ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective

10   complaints, and because [the claimant's] testimony was similar to such complaints, it

11   follows that the ALJ also gave germane reasons for rejecting [the lay witness's]

12   testimony").

13           **D.    Relying on Vocational Expert**

14           Finally, Ms. Pratt argues that the ALJ failed to explain all of her limitations to the

15   vocational expert.  (Pl. Br. at 5-6.)  As a result, that expert was operating under incomplete

16   assumptions and the ALJ erred in relying on the vocational expert's testimony.  An ALJ,

17   however, may exclude those alleged limitations as long as "specific and legitimate reasons

18   for disbelieving" such as objective medical evidence not supporting the claim are given.

19   *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988).  As explained above, several medical

20   opinions have provided such evidence.  The ALJ did not err in this respect.

21   **IV.    CONCLUSION**

22           Accordingly,

23           **IT IS ORDERED** affirming the July 11, 2018 decision of the ALJ (R. at 34-45).

24           **IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment

25   in the Commissioner's favor and close this case.

26   / /

27   / /

28   / /

1    Dated this 31st day of July, 2020.

2

3

                        Michael T. Liburdi
                        _____
                        Michael T. Liburdi
4                       United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28